## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
## (CAMDEN VICINAGE)

| | | |
|---|---|---|
| Crystal Langford<br>243 Tamerlane Apartments<br>Sicklerville, NJ 08081 | : | |
| | : | |
| | : | JURY DEMANDED |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. |
| Gloucester Township Police Department<br>1261 Chews Landing Road<br>Clementon, NJ 08021 | : | |
| | : | |
| And | : | |
| | : | |
| Gloucester Township<br>1261 Chews Landing Road<br>Clementon, NJ 08021 | : | |
| | : | |
| And | : | |
| | : | |
| Paul Fisher<br>1261 Chews Landing Road<br>Clementon, NJ 08021<br>(Individually and in his official capacity as<br>Police Officer) | : | |
| | : | |
| And | : | |
| | : | |
| Thomas Knapp, Jr.<br>1261 Chews Landing Road<br>Clementon, NJ 08021<br>(Individually and in his official capacity as<br>Police Officer) | : | |
| | : | |
| And | : | |
| | : | |
| Aquasia Davis<br>Camden County Prosecutor's Office<br>25 N. 5th Street<br>Camden, NJ 08102<br>(Individually and in her official capacity as<br>Detective) | : | |

And                                            :
                                               :
                                               :
Anthony Massi                                  :
1261 Chews Landing Road                        :
Clementon, NJ 08021                            :
(Individually and in his official capacity as  :
Police Officer)                                :
                                               :
         And                                   :
                                               :
Lieutenant, Kelljan                            :
1261 Chews Landing Road                        :
Clementon, NJ 08021                            :
(Individually and in his official capacity as  :
Police Officer)                                :
                                               :
         And                                   :
                                               :
Winslow Township                               :
125 South Route 73                             :
Braddock, NJ 08037                             :
                                               :
         And                                   :
                                               :
Winslow Township Police Department             :
125 South Route 73                             :
Braddock, NJ 08037                             :
                                               :
John Doe Defendants Nos. 1-10                  :
                                               :
                                               :
         Defendants                            :

## CIVIL ACTION COMPLAINT

### I. Parties and Reasons for Jurisdiction.

1.    Plaintiff, Crystal Langford (hereinafter "Plaintiff") is an adult individual residing

at the above address.

2.      Defendant, Gloucester Township is organized under the laws of the State of New Jersey with the capacity to sue and be sued.  The Township is the legal and political entity responsible for the Gloucester Township Police Department, its officials and employees.

3.      Defendant, Gloucester Township Police Department is a governmental entity within the State of New Jersey empowered to enforce the laws within its jurisdiction for the purposes of protecting and preserving the persons and property within the geographical and legal jurisdiction of the Township of Gloucester.

4.      Paul Fisher is, and at times material hereto, a police officer for the Gloucester Township Police Department, and was acting under color of state law.  He is being sued herein, in his individual and official capacity.

5.      Thomas Knapp, Jr. is, and at times material hereto, a police officer for the Gloucester Township Police Department, and was acting under color of state law.  He is being sued herein, in his individual and official capacity.

6.      Aquasia Davis is, and at times material hereto, a detective with the Camden County Prosecutor's Office, and was acting under color of state law.  She is being sued herein, in her individual and official capacity.

7.      Anthony Massi is, and at times material hereto, a police officer for the Gloucester Township Police Department, and was acting under color of state law.  He is being sued herein, in his individual and official capacity.

8.      Lieutenant Kelljan, is, and at times material hereto, a police officer for the Gloucester Township Police Department, and was acting under color of state law.  He is being sued herein, in his individual and official capacity.

9.     Winslow Township is organized under the laws of the State of New Jersey with the capacity to sue and be sued.  The Township is the legal and political entity responsible for the Winslow Township Police Department, its officials and employees.

10.    Winslow Township Police Department is a governmental entity within the State of New Jersey empowered to enforce the laws within its jurisdiction for the purposes of protecting and preserving the persons and property within the geographical and legal jurisdiction of the Township of Winslow.

11.    Defendants, John Does Nos. 1-10 are officials, police officers and/or other public officials acting under color of state law who were involved in the following incident set forth in Plaintiff's complaint and at all times material hereto were acting under color of state law and are being sued in their individual and official capacities.

12.    Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

13.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants conduct business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**III.  Operative Facts.**

14.    Plaintiff, Crystal Langford is a forty-five (45) year old black woman.

15.    On April 29, 2014, at approximately 11:00am, Ms. Langford was operating her vehicle near her home in Winslow Township and was stopped by two John Doe Defendant Police Officers employed by and acting on behalf of Winslow Township Police Department.

16.    Plaintiff was stopped in her vehicle and cited for driving with an expired motor vehicle registration.

17.     At the scene, a female police officer, Jane Doe Defendant No. 1 of Winslow Township Police Department ordered Ms. Langford's vehicle to be confiscated and towed, as a result of Ms. Langford's inability to rectify the expired registration.

18.     Plaintiff and Jane Doe Defendant No. 1 waited for the tow truck and Jane Doe Defendant No. 1 transported Plaintiff back to her apartment in a police vehicle.  At the time both women arrived at Ms. Langford's apartment, the approximate time was 12:30pm.

19.     Plaintiff thanked Jane Doe Defendant No. 1 for the ride home and she entered her apartment, ordered food to be delivered for lunch and remained inside.

20.     At approximately 1:30pm on the same date, John Doe Defendant No. 1, another Winslow Township Police Officer knocked on Plaintiff's door.

21.     John Doe Defendant No. 1 advised that Gloucester Township Police Department had radioed Winslow Township Police Department that Ms. Langford had been involved in a fight with Shermaine Lewis and he was there to investigate.

22.     John Doe Defendant No. 1 examined Plaintiff's hands for evidence of her involvement in a physical altercation and questioned her about the incident, to which Ms. Langford explained that she had been stopped and cited earlier in the day for an expired registration and that she was in custody and contact with Winslow Township Police Department earlier in the day.

23.     While Ms. Langford was talking with John Doe Defendant No. 1, and upon hearing the radio call that John Doe Defendant No. 1 was interviewing Ms. Langford, Jane Doe Defendant No. 1 returned to Ms. Langford's apartment and explained to John Doe No. 1 that indeed, Ms. Langford had been in her custody earlier for approximately two hours and based

upon the time that the alleged altercation was to have occurred, it was unlikely, if not impossible that Ms. Langford could have been involved.

24.      Both officers thanked Ms. Langford and advised that they would be reporting the results of their meeting and interview with Ms. Langford to the officers at Gloucester Township Police Department.

25.      After the Winslow Police Officers left Ms. Langford's residence, she believed that the investigation was over and she would not be charged with any crime.

26.      At approximately 8:00pm on April 29, 2014, Ms. Langford was arrested by Winslow Township Police Officers at her home, upon a warrant issued pursuant to Defendants Paul Fisher's and Thomas Knapp's request.  [See Exhibit "A", a true and correct copy of Plaintiff's arrest report prepared by Defendants.]

27.      Ms. Langford also informed John Doe Defendant No. 1 that Shermaine Lewis constantly made false reports about her activities to multiple police departments and the New Jersey Department of Youth and Family Services, arising out of Ms. Lewis's anger towards Plaintiff because Ms. Langford enjoys full legal and physical custody of Ms. Lewis's biological children.

28.      Plaintiff, Langford has full legal and physical custody over Ms. Shermaine Lewis's biological children.

29.      Plaintiff Langford has a restraining order against Ms. Lewis.

30.      Plaintiff Langford drops the children off every Saturday at the Winslow Township Police Department where the children are met by Ms. Lewis and she has eight hours of visitation.

31.      Ms. Lewis has a history in both Gloucester Township and Winslow Township of falsely reporting Ms. Langford to the police and the Department of Youth and Family Services.

32.     For example, on April 26, 2014, New Jersey DYFS was present to assist a DYFS investigation instigated by a false complaint made against Ms. Langford by Ms. Lewis. [See Exhibit "B", a copy of a police report regarding the April 26, 2014 incident.]

33.     At this time, upon information and belief, Winslow Township officers explained to Defendants that Plaintiff could not have been involved in this fight given the fact that she was in custody and/or talking with police at the time of the arrest.

34.     Upon information and belief, Winslow Township Police Officers (John Doe Defendants) repeatedly informed Gloucester Police Officers and all Defendants that given the timing of the reported incident, it was highly unlikely, if not impossible for Plaintiff to have been involved.

35.     Despite this knowledge, Plaintiff was transported to Gloucester Township Police Department where she was booked.

36.     Ms. Langford immediately waived her Miranda rights and provided a taped statement explaining her whereabouts on April 29, 2014. [See Exhibit "C", a copy of Ms. Langford's statement.] The facts set forth in Ms. Langford's statement corroborated with the facts and written reports of the Winslow Township Police Department and exonerated Ms. Langford from all charges arising from this matter.

37.     Defendants willfully failed to include exculpatory information provided by Langford and/or Winslow Township Police Department in any request to charge, affidavit of probable cause or evidence presented to the grand jury in Ms Langford's case.

38.     Also, Defendants elicited recorded statements from Shermaine Lewis and Antonia Nunez (Shermaine Lewis's friend). [See Exhibit "D", statement of Shermaine Lewis; Exhibit "E", statement of Antonia Nunez.]

39.     Defendants willfully and maliciously credited the contradictory and inconsistent statements of Lewis and Nunez and disregarded the credible statement of Plaintiff.

40.     Plaintiff's statement, that the time frame of the supposed incident in which she was cited by Winslow Township Police, transported to her home, her vehicle impounded and Lewis's motivation for the false reporting of a crime was willfully disregarded and recklessly ignored by Defendants.

41.     Plaintiff's statement which was easily verifiable was willfully ignored in favor of the inconsistent and clearly false statements made by Lewis and Nunez.

42.     Plaintiff's appearance upon entry to her apartment at approximately 1:30pm, on which she was physically examined for evidence of a fight was willfully ignored and disregarded by Defendants.

43.     Gloucester Township Police provided Nunez with a photo array to identify Plaintiff, and she failed to identify Ms. Langford in the photo array. [See Exhibit "E".]

44.     Without any physical evidence or reliable eyewitness statements, Defendants willfully and wantonly and with callous disregard for Ms. Langford's rights, charged Ms. Langford with several offenses: 2C:18-2A, Burglary; 2C:12-1B(3), Aggravated Assault; 2C:39:4D, Possession of a Weapon for Unlawful Purpose; 2C:39-5D Unlawful Possession of a Weapon and 2C:17-3A Criminal Mischief.

45.     Defendants charged Plaintiff with the knowledge that the timing of the incident described by Lewis and Nunez was impossible given Winslow Township's custody of Plaintiff on the same date.  Nevertheless, Defendants proceeded with charges against Plaintiff.

46.     Ms. Langford was imprisoned for one (1) month and upon posting bail, she was placed under house arrest for approximately one (1) year.

47.     Ms. Langford retained and paid for a criminal defense attorney.

48.     On September 2, 2015, Ms. Langford was acquitted of all charges.

49.     From May 15, 2014 through June 19, 2014, Defendants Massi, Kelljan and Davis undertook an investigation while Ms. Langford was imprisoned on the false charges.

50.     Upon information and belief, the purpose of the investigation was not to uncover facts about what actually happened, but to bolster and support the false charges already in place.

51.     The investigation report prepared by these Defendants is filled with hearsay, unreliable false statements, and lacks evidence supporting charges against Ms. Langford.

52.     For example, Defendants discuss a statement made by Ms. Lewis that she attended a funeral on May 13, 2014 in which a man named "Hyneef" informed Ms. Lewis that Ms. Langford had threatened to kill her.  This supposed funeral occurred while Ms. Langford was imprisoned and no effort was made to further investigate this clearly false statement alleging terroristic threats and witness intimidation, however, the statement was utilized by Defendants to further implicate Ms. Langford in the assault and to smear her good name and reputation.

53.     Ms. Lewis claimed that her injuries from the supposed incident were limited to a headache and two scratches, yet Defendants maliciously and wantonly charged Plaintiff with aggravated assault.

54.     As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: imprisonment, great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages.


**IV.  Causes of Action.**

## COUNT I – 4th AMENDMENT--MALICIOUS PROSECUTION
### (42 U.S.C.A. § 1983 et seq)
### (Plaintiff v. Defendants)

55.     Plaintiff incorporates paragraphs 1-54 as if fully set forth at length herein.

56.     At all times described above, Defendants were acting under color of state law.

57.     As described above, Defendants initiated a criminal charge against Plaintiff.

58.     As described above, Defendants initiated criminal charges with malice.

59.     As described above, Defendants initiated criminal charges against Plaintiff without probable cause.

60.     All charges described above were dismissed against the Plaintiff.

61.     As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: imprisonment, great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages.

62.     As a result of the conduct of Defendants, Plaintiff hereby demands punitive damages.

63.     Pursuant to 42 U.S.C. §1983, Plaintiff demands attorneys fees and court costs.

## COUNT II – 4th AMENDMENT--FALSE ARREST
### (42 U.S.C.A. § 1983 et seq)
### (Plaintiff v. Defendants)

64.     Plaintiff incorporates paragraphs 1-63 as if fully set forth at length herein.

65.     At all times material hereto, Defendants were acting under color of state law.

66.     As described above, Defendants arrested Plaintiff without reasonable suspicion or probable cause that she committed a criminal offense.

67.     Given the totality of the circumstances involving Plaintiff's arrest, no reasonable officer could have believed that there existed probable cause to arrest Plaintiff.

68.     All charges described above were dismissed against the Plaintiff.

69.     As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: imprisonment, great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages.

70.     As a result of the conduct of Defendants, Plaintiff hereby demands punitive damages.

71.     Pursuant to 42 U.S.C. §1983, Plaintiff demands attorneys fees and court costs.

## COUNT III --MALICIOUS PROSECUTION
### (New Jersey State Law Claims)
### (Plaintiff v. Defendants)

72.     Plaintiff incorporates paragraphs 1-71 as if fully set forth at length herein.

73.     At all times described above, Defendants were acting under color of state law.

74.     As described above, Defendants initiated a criminal charge against Plaintiff.

75.     As described above, Defendants initiated criminal charges with malice and without probable cause.

76.     All charges described above were dismissed against the Plaintiff.

77.     As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: imprisonment, great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages.

78.    As a result of the conduct of Defendants, Plaintiff hereby demands punitive damages.

79.    Plaintiff demands attorneys fees and court costs.

## COUNT IV --FALSE ARREST
### (New Jersey State Law Claims)
### (Plaintiff v. Defendants)

80.    Plaintiff incorporates paragraphs 1-79 as if fully set forth at length herein.

81.    At all times material hereto, Defendants were acting under color of state law.

82.    As described above, Defendants arrested Plaintiff without reasonable suspicion or probable cause that he committed a criminal offense.

83.    Given the totality of circumstances surrounding Plaintiff's arrest, no reasonable officer could have believed that probable cause existed to arrest Plaintiff on the charges initiated by Defendants.

84.    All charges described above were dismissed against the Plaintiff.

85.    As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: imprisonment, great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages.

86.    As a result of the conduct of Defendants, Plaintiff hereby demands punitive damages.

87.    Plaintiff demands attorneys fees and court costs.

## COUNT V –14th AMENDMENT—SELECTIVE ENFORCEMENT
### (42 U.S.C.A. § 1983 et seq)
### (Plaintiff v. Defendants)

88.    Plaintiff incorporates paragraphs 1-87 as if fully set forth at length herein.

89.     At all times material hereto, Defendants were acting under color of state law.

90.     As described above, Defendants, arrested Plaintiff without reasonable suspicion or probable cause that she committed a criminal offense.

91.     Plaintiff was singled out for ongoing prosecution as a direct result of the animus exhibited by Defendants, as set forth above.

92.     Upon information and belief, charges were initiated against Plaintiff based on racial animus, because Plaintiff did not reside within the township limits of Gloucester or some other arbitrary factor.

93.     Defendants' conduct during the investigation demonstrates a willful disregard for Plaintiff's constitutional rights.

94.     All charges described above were dismissed against the Plaintiff.

95.     As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: imprisonment, great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages.

96.     As a result of the conduct of Defendants, Plaintiff hereby demands punitive damages.

97.     Plaintiff demands attorneys fees and court costs.

## COUNT VI –14th AMENDMENT—CIVIL RIGHTS VIOLATIONS
### (42 U.S.C.A. § 1983 et seq)
### (Plaintiff v. Defendants)

98.     Plaintiff incorporates paragraphs 1-97 as if fully set forth at length herein.

99.     At all times material hereto, Defendants were acting under color of state law.

100.    As described above, Defendants, acted with racial animus and no other lawful purpose in arresting and detaining Plaintiff without probable cause.

101.    All charges described above were dismissed against the Plaintiff.

102.    As a proximate result of Defendants' conduct, Plaintiff sustained significant damages, including but not limited to: imprisonment, great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages.

103.    As a result of the conduct of Defendants, Plaintiff hereby demands punitive damages.

104.    Plaintiff demands attorneys fees and court costs.

### COUNT VI —MONELL
### (42 U.S.C.A. § 1983 et seq)
**(Plaintiff v. Defendants, Winslow Township, Winslow Township Police Department, Gloucester Township, Gloucester Township Police Department)**

105.    Plaintiff incorporates paragraphs 1-104 as if fully set forth at length herein.

106.    At all times material hereto, Defendants instituted policies and procedures within the police department, with indifference to the constitutional rights of the citizens of Gloucester Township and Winslow Township, including, but not limited to Plaintiff.

107.    Those policies and procedures include relying on uncorroborated statements, failing to check or verify facts, failing to cooperate with other police departments to verify facts, unduly crediting the statements of unreliable individuals, having a willful disregard for the constitutional rights of citizens of New Jersey, arresting citizens without probable cause; and failing to investigate incidents of alleged criminal offenses.

108.    As a proximate result of Defendants' policies and procedures, Plaintiff sustained significant damages, including but not limited to: imprisonment, great economic loss, future lost

earning capacity, lost opportunity, as well as emotional distress, mental anguish, humiliation, pain and suffering and consequential damages.

109.    As a result of the conduct of Defendants, Plaintiff hereby demands punitive damages.

110.    Plaintiff demands attorneys fees and court costs.

**V.  Relief Requested.**

**WHEREFORE,** Plaintiff Crystal Langford demands judgment in her favor and against Defendants jointly and severally, in an amount in excess of $1,500,000.00 together with:

A.   Compensatory damages, including but not limited to: imprisonment, lost opportunity, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering; deprivation of her liberty and property interests,

B.  Punitive damages;

C.  Attorneys fees and costs of suit;

D.  Interest, delay damages; and,

E.  Any other further relief this Court deems just, proper, and equitable.

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY:_____

**GRAHAM F. BAIRD, ESQUIRE**
Two Penn Center
1500 JFK Boulevard,  Suite 1240
Philadelphia, PA 19110

Attorney for Plaintiff, Crystal Langford

Date:_____