**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| ———————————————— : | |
| CRYSTAL LANGFORD, : | |
| : | Civil No. 16–01023 (RBK/AMD) |
| : | |
| : | **OPINION** |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| GLOUCESTER TOWNSHIP POLICE : | |
| DEPARTMENT, *et al.* : | |
| Defendants. : | |
| ———————————————— : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendants' Motion for Summary Judgment (Doc. No. 67) and Plaintiff's Motion for Enlargement of Time to Respond (Doc. No. 71). Because Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. No. 72) supersedes the Motion for Extension of Time to Respond, the Motion for Extension of Time to Respond is **DISMISSED AS MOOT**. For the reasons set forth in this Opinion, the Court will **GRANT** Defendants' Motion for Summary Judgment.

I.      BACKGROUND

Plaintiff Crystal Langford ("Plaintiff") is a forty-five-year-old black woman and resident of New Jersey. *First Amended Complaint* ("FAC") ¶ 11. In just one day, on April 29, 2014, Langford had at least three encounters with police. *See id.* First, at approximately 11:00am, two police officers from the Winslow Township Police Department ("Winslow PD") cited her for

driving with an expired motor vehicle registration and ordered her car towed. *Pl. St. Mat'l Fact* ¶ 3. At approximately 12:30pm, Officer Kathleen Schultz drove her two miles to her home in Sicklerville, New Jersey. *Id.*

One hour later, at approximately 1:30pm, Defendant Paul Fisher of the Gloucester Township Police Department ("Gloucester PD") responded to a 9-1-1 call to investigate a purported assault that had occurred four miles from Langford's home. *Id.* ¶ 1; *Def. Rep. Br.*, 3. The 9-1-1 caller, later identified as Antonia Nunez, witnessed a woman strike Shermaine Lewis with a broomstick at her Sicklerville residence. *Pl. St. Mat'l Fact* ¶ 2. Nunez identified the assailant as "Crystal" and described her as wearing a "hot pink" sweatshirt. *Id.* ¶ 2. Officer Fisher responded to the call, arrived at Lewis's home, and observed a broken door. *Id.* ¶ 4. He then questioned Lewis, who confirmed the identity of the assailant as Crystal Langford. *Id.*; *Fisher Dep'n*, 18–9; *see also Master Incident Report*, 4. Lewis informed Officer Fisher that Langford had legal custody over Lewis's biological children as well as a restraining order against her. *Pl. St. Mat'l Fact* ¶ 6. Lewis provided an additional statement to Detective Anthony Massi of the Gloucester PD and again confirmed the identity of her assailant as Crystal Langford. *Id.* ¶ 12.

At approximately 2:00pm, Langford had her second encounter with the Winslow PD. Officer Jeffrey Wyld knocked on her door, informed her that the Gloucester PD reported her assault on Shermaine Lewis, and requested to inspect her hands. *FAC* ¶ 18; *Pl. St. Mat'l Fact* ¶ 3. During this examination, Officer Schultz, the officer who had driven Langford home during her first encounter with the police, returned and informed Officer Wyld that Langford was likely with her during the alleged assault of Lewis. *FAC* ¶ 20. Both Winslow PD officers then left her home. *Id.* ¶ 21.

Between Plaintiff Langford's second and third encounter with the police, Gloucester PD Defendants Officer Paul Fisher and Sgt. Thomas Knapp, Jr. prepared a warrant request for her arrest. *Pl. St. Mat'l Fact* ¶¶ 17–9. They gathered evidence, interviewed witnesses, and created an incident report of the assault. *Id.* Then, they contacted Assistant Prosecutor Bill Stass at the Camden County Prosecutor's Office. *Id.* Stass reviewed this information, which included the 9-1-1 call transcript, pictures of the scene, Lewis's statement, and the incident report. *Id.* Stass agreed that Crystal Langford should be charged with crimes relating to the assault against Lewis. *Id.* Officer Fisher then filed the warrant request, and a municipal judge issued a warrant to arrest Langford for crimes related to the incident. *Id.* Langford then encountered police for a third time.

At approximately 8:00pm, Winslow PD arrested Langford pursuant to the warrant request submitted by Officer Fisher and approved by Sgt. Knapp. *Id.* She informed the Winslow PD that victim Lewis regularly made false reports to police departments. *Id.* ¶ 18. She revealed that she had a restraining order against Lewis. *Id.* She also explained that such reports arose from her longstanding legal custody of Lewis's children. *Id.* In addition, Langford insisted she could not have been involved in the alleged altercation because she was with Officer Schultz. *Id.* Officers Schultz and Wyld, she claims, repeatedly informed the Gloucester PD that, given the timing of the reported incident, it was unlikely for her to have been involved. *FAC* ¶ 31. The Winslow PD transported Langford to the Gloucester PD, where she waived her Miranda rights, provided a taped statement to Detective Massi, and denied all allegations.

The Gloucester PD charged Langford with Burglary, Aggravated Assault, Possession of a Weapon for Unlawful Purpose, Unlawful Possession of a Weapon, and Criminal Mischief. *Pl. St. Mat'l Fact* ¶ 17. She served one month at the Camden County jail and, upon release on her

recognizance, was under house arrest for approximately one year. *Id.* ¶ 19. A grand jury later indicted her for violations of N.J.S.A. 2C:18-2b(1)(Burglary), 2C:12-1b(1) (Aggravated Assault – First Degree), 2C:12-1b(3) (Aggravated Assault – Third Degree), 2C:12-1b(7) (Aggravated Assault – Third Degree), 2C:39-4d (Possession of a Weapon for Unlawful Purpose – Third Degree), and 2C:39-5d (Possession of a Weapon for Unlawful Purpose – Fourth Degree). *Id.* ¶ 20. After a bench trial on the merits, Crystal Langford was found "not guilty" on all counts. *Id.* ¶ 20–1.

Langford filed the instant lawsuit against Defendants Gloucester Township, Gloucester PD, Officer Paul Fisher, Sgt. Thomas Knapp, Jr., Detective Anthony Massi, and John Doe Defendants Nos. 1–10 on February 23, 2016. *Doc. No.* 1. The complaint alleges six causes of action, which include violations of the Fourth and Fourteenth Amendments and related New Jersey state law claims. *Doc. No.* 55. More specifically, Counts I and II allege false arrest and malicious prosecution under 42 U.S.C.A. § 1983. *Id.* Counts III and IV include related claims under New Jersey state law. *Id.* Counts V, VI, and VII allege selective enforcement, and civil rights and *Monell* violations under Section 1983. *Id.* Langford claims damages of $1,500,000 and requests additional damages for compensatory and punitive damages as well as attorneys' fees and other costs. *FAC* ¶ 102.

Plaintiff Langford claims Defendants willfully ignored the statements made by her and the Winslow PD in its request to charge, affidavits of probable cause, and evidence presented to the grand jury in connection with the Plaintiff's case. *Id.* ¶¶ 34–7. Plaintiff claims she had an alibi, namely that her involvement with Officer Schultz during the first encounter precluded her involvement in the Lewis assault. *Id.* ¶¶ 41–2. Specifically, Defendants ignored her history with Shermaine Lewis, including past physical altercations and prior false reports. *Id.* ¶¶ 34, 37–8.

Plaintiff also claims Defendants should have been made aware of Nunez's inability to subsequently identify her at the Gloucester PD.

Defendants filed the instant motion for summary judgment on February 15, 2018 (Doc. No. 67). This motion argues that summary judgment is warranted because there was probable cause to arrest Plaintiff. *Id.* Defendants argue, in the alternative, that they are entitled to qualified immunity. *Id.* The Court has considered the submissions of the parties, and the motion for summary judgment is now ripe for review.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the Court finds "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must establish the nonexistence of a "genuine issue." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). This burden is satisfied when the movant "produce[s] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

If the party seeking summary judgment makes this showing, the burden shifts to the nonmoving party who must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The Court notes that the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must at least present probative evidence from which a jury might return a verdict in his favor. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x. 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

The Court's role in deciding the merits of a party's motion for summary judgment is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. As such, credibility determinations remain within the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

III.     DISCUSSION

A.   False Arrest (Counts II and IV)

1.  *Gloucester Township and Gloucester PD*

Plaintiff asserts a false arrest claim against Gloucester Township and the Gloucester PD. A municipality cannot be held liable for unconstitutional acts of its employees on a theory of *respondeat superior*, *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978), so the Court will analyze Plaintiff's Section 1983 claims under the discussion of *Monell* (Count VII). Plaintiff's related state law claim of False Arrest is similarly barred by immunity. The New Jersey Tort Claims Act ("NJTCA") confers immunity to a public entity whether such injury arises out of an act or omission of the public entity or a public employee or any other person. N.J. Stat. Ann. § 59:2-1(a). Defendants Gloucester Township and the Gloucester PD therefore have immunity against Plaintiff's common law claim of false arrest.

2. *Knapp*, *Fisher*, *Massi*

Plaintiff claims the Defendants Fisher, Knapp, and Massi did not have probable cause to arrest her under both Section 1983 and New Jersey state law. The New Jersey Civil Rights Act ("NJCRA") was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under either the United States or New Jersey Constitutions. *Slinger v. New Jersey*, No. 07–5561, 2008 WL 4126181, at *5–6 (D.N.J. Sept. 4, 2008), *rev'd on other grounds*, 366 F. App'x 357 (3d Cir. 2010); *Armstrong v. Sherman*, No. 09–716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010). NJCRA provides, in pertinent part, a private cause of action for

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law . . . .

N.J. Stat. Ann. 10:6–2(c). Consistent with this language, this Circuit has interpreted state claims for false arrest analogously to related Section 1983 claims. *See Pettit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases); *see also Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 163 n.5 (3d Cir. 2008) (determining protections under free speech clause of New Jersey Constitution are "generally interpreted as co-extensive with the First Amendment"). This Court will therefore consider Plaintiff's state and federal false arrest claims together.

To establish a claim under Section 1983, a plaintiff must demonstrate that her constitutional rights were violated and that a person acting under color of state law committed the deprivation. *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 313 (D.N.J.2015) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). As such, the Court must identify the exact contours of the underlying right said to have been violated and determine whether the plaintiff has alleged a deprivation of a constitutional right at all. *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

Under federal and New Jersey law, a false arrest occurs when there is an arrest, and that arrest lacks probable cause. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). There is probable cause when the facts and circumstances are "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Sharrar v. Felsing*, 128 F.3d 810, 817-18 (3d Cir. 1997). While probable cause "requires more than mere suspicion . . . it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." *Orsatti v. N. J. State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995). Ultimately, the test for probable cause "is an objective one, based on 'the facts available to the officers at the moment of arrest.'" *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (quoting *Beck*, 379 U.S. at 96). For example, probable cause exists "[w]hen a police officer has received a reliable identification by a victim of his or her attacker . . . ." *Wilson v. Russo*, 212 F.3d 781, 791 (3d Cir. 2000) (internal quotation marks and emphasis omitted).

This Court notes that the question of probable cause in a Section 1983 action is generally one for the jury. *See Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998). Courts may, however, "conclude 'that probable cause exists as a matter of law if the evidence, viewed most

favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788–89 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir. 1997)).

Here, Defendants Fisher and Knapp reasonably believed the evidence represented probable cause to arrest Plaintiff Crystal Langford. Most importantly, they arrested her pursuant to a warrant issued by a municipal judge. In making this request, they provided investigation reports, photos from the scene, and witness statements. *See Complaint – Warrant*, 000743. This evidence included an eye-witness, Antonia Nunez, who called 9-1-1 and reported that she observed an altercation. *See 9-1-1 Call Tr.* Nunez identified Plaintiff by her first name and described the Plaintiff's "hot pink" clothing.[1] *9-1-1 Call Tr.* 2:3-5; *Id.* 2:7. In addition, Lewis corroborated this information and filed a report with Gloucester PD. *See Master Incident Report*, 3-4; *Fisher Dep'n.* Defendants reviewed this evidence and contacted the Camden County Prosecutor's Office to assist in the determination of a warrant request. *Pl. Mat'l Fact St.* ¶ 16. The Camden County Prosecutor's Office agreed that Plaintiff should be charged with the aforementioned crimes, and Defendants properly requested a warrant and summons to that effect.

Municipal Judge Nicholas Trabosh issued the warrant and thereby created a presumption of probable cause. As this Circuit has explained, "one of the reasons for requiring a neutral [judge] to evaluate probable cause is that an uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead." *Wilson*, 212 F.3d at 787; *see also Johnson v. United States*, 333 U.S. 10, 13–4 (1948) (stating that "[t]he point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which

---

[1] Plaintiff was later arrested wearing a pink sweater consistent with Nunez's description. *See Camden County Prosecutor's Office, Investigation Report*, 3.

reasonable men draw from evidence," but rather that "[i]ts protection consists in requiring that those inferences be drawn by a neutral and detached [judge] instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").

Where, as here, an arrest is made pursuant to a warrant, a plaintiff can prevail in a Section 1983 action in only limited circumstances, such as where the officer "made false statements or omissions that created a falsehood in applying for a warrant," *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468-69 (3d Cir. 2016) (alteration omitted) (quoting *Wilson*, 212 F.3d at 786-87), or "where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421, 82 L. Ed. 2d 677 (1984)). This Circuit has extended this test to situations where affiants have omitted information from the affidavit. *See, e.g., United States v. Frost*, 999 F.2d 737, 743 n.2 (3d Cir. 1993). Therefore, a successful challenge to an arrest warrant must show that defendants acted "'knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant' and "such statements or omissions are material, or necessary, to the finding of probable cause.'" *Lincoln v. Hanshaw*, 375 F. App'x 185, 189 (3d Cir. 2010) (quoting *Sherwood*, 113 F.3d at 399).

Plaintiff challenges the presumption of probable cause inherent in the warrant issuance. She states that Defendants "absolute[ly] fail[ed] and refus[ed] to verify any exculpatory information" offered by her. *Pl. Opp'n Motion*, 9. Specifically, the officers should have checked whether Lewis had previously filed past false complaints against her. *Pl. Mat'l Fact St.* ¶ 18. Had Defendants considered this information, Plaintiff reasons, they would have realized Lewis "made numerous false and frivolous complaints." *Pl. Opp'n Motion*, 12. The warrant

application was therefore "filled with hearsay, unreliable false statements, and lack[ed] evidence supporting charges against Plaintiff." *Pl. Compl.* ¶ 51.

This Court, even when viewing the facts in Plaintiff's favor, finds these arguments unpersuasive. First, Plaintiff seems to confuse probable cause to arrest with a prosecutor's subsequent burden to prove an offense against her beyond a reasonable doubt. *See Orsatti,* 71 F.3d at 482–83 ("Probable cause . . . does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."). Second, Plaintiff misconstrues much of the evidence offered by Defendants. For example, Defendants were aware of Plaintiff and Lewis's child custody prior to the arrest. *See Massi Dep'n*, 13; *Fisher Dep'n*, 19. In addition, even if the 9-1-1 caller failed to identify Plaintiff in a subsequent picture lineup, both Defendants Massi and Fisher found Lewis's report of the assault to be credible at the time of the arrest. *Massi Dep'n*, 13. *See Smart v. Twp. Of Gloucester*, No. 16-138, 2007 WL 1186043, at *3 (D.N.J. Apr. 20, 2007) (explaining a single and credible witness is sufficient for a showing of probable cause to arrest); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 588, 199 L. Ed. 2d 453 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation of suspicious facts.").

Plaintiff similarly fails to offer evidence to raise a genuine dispute over the presumption of probable cause. Like the issuance of the warrant, the Court here takes judicial notice that a grand jury indicted plaintiff on the charges at issue. *Pl. St. Mat'l Fact* ¶ 20. A grand jury indictment is *prima facie* evidence of probable cause to prosecute. *See Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001) (noting that an indictment establishes probable cause "by definition"). Still, Plaintiff Langford has not provided any probative evidence to show that the indictment was "procured by fraud, perjury or other corrupt means."

*Woodyard v. Cty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013) (quoting *Rose v. Bartle*, 871

F.2d 331, 353 (3d Cir. 1989)).  Again, even if the Court views every inference in Plaintiff's

favor, the allegations amount to little more than mere negligence on behalf of some of the

Defendants.  Absent some factual showing by a preponderance of the evidence of a knowing and

deliberate disregard of the truth, Plaintiff cannot dispute the presumption of probable cause

consistent with a grand jury indictment.  *See Lincoln*, 375 F. App'x at 189; *see also Shepherd v.

Ambrosino*, No. 07-4968, 2010 WL 2802238, at *4 (D.N.J. July 15, 2010).

The Court finds that Defendants had probable cause to arrest Plaintiff for the crimes of

burglary, aggravated assault, possession of a weapon for an unlawful purpose, unlawful

possession of a weapon, and criminal mischief.  The Court therefore grants this part of

Defendants' motion for summary judgment.


### B. Malicious Prosecution (Counts I and III)

1. *Gloucester Township and Gloucester PD*

Plaintiff asserts a malicious prosecution claim against Gloucester Township and the

Gloucester PD.  As explained above, a municipality cannot be held liable for unconstitutional

acts of its employees on a theory of *respondeat superior*, *Monell*, 436 U.S. at 691, so the Court

will analyze Plaintiff's Section 1983 claims under the discussion of *Monell* (Count VII).

Plaintiff's state law claim of malicious prosecution is similarly barred by immunity.  The New

Jersey Tort Claims Act ("NJTCA") confers immunity to a public entity for acts of its employees

that constitute a crime, actual fraud, actual malice, or willful misconduct, N.J. Stat. Ann. § 59:2–

10, and the tort of malicious prosecution requires proof of actual malice.  Defendants Gloucester

Township and Gloucester PD therefore have immunity against Plaintiff's common law malicious prosecution claim.

   2.  *Knapp, Fisher, Massi*

Plaintiff asserts a claim for malicious prosecution under Section 1983 and a related New Jersey tort law claim against Officers Knapp, Fisher, and Massi.  *Doc. No.* 1.  The complaint alleges that Defendants "initiated criminal charges with malice" and "without probable cause."  *FAC* ¶¶ 58–9, 75.

Like the state and federal claim of false arrest above, the Court analyzes the state and federal malicious prosecution claims together.[2]  In order to state a *prima facie* case for a Section 1983 claim of malicious prosecution in violation of the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, and that there has been some deprivation of liberty consistent with a "seizure" in violation of the Fourth Amendment.  *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (citing *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003)); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998).  There are four elements to the common law tort of malicious prosecution: (1) the defendant instituted a criminal action against the plaintiff, (2) the defendant actuated the action maliciously, (3) the action lacked probable cause, and (4) the action terminated in favor of the plaintiff.  *See Wiltz v. Middlesex Cty. Office of Prosecutor*, 249 F. App'x 944, 949 (3d Cir. 2007) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).

Although Langford has adequately alleged the first and fourth element of malicious prosecution, she has failed to allege facts demonstrating that any state actor acted with malice in

_____

[2] The common law claim for malicious prosecution has a similar probable cause element as a 1983 claim.  *See Lind v. Schmid*, 67 N.J. 255, 263, 337 A.2d 365, 369 (1975).

instituting the proceeding against her or, as noted previously, that any state actor instituted the action without probable cause. The Court notes that it is not enough to state, in conclusory fashion, that the defendants acted with malice and that there was no probable cause for the prosecution. Instead, Plaintiff Langford must state facts regarding the information known to the person who instituted the proceeding, from which facts it could be concluded that the prosecution was instituted without probable cause. *See Carney v. Pennsauken Twp. Police Dept.*, No. 11-7366, 2013 WL 2444043, at *3–4 (D.N.J. June 3, 2013); *see also Pitman v. Ottehberg*, No. 10–2538, 2011 WL 6935274, at *11, *13–4 (D.N.J. Dec. 30, 2011).

While the Court has determined no jury could find that Defendants lacked probable cause to effect the arrest, *Section I.A*, *supra*, Plaintiff takes a second bite at the probable cause apple by insisting she had an alibi. More specifically, Plaintiff alleges she was "in custody" with the Winslow PD during the incident, she informed the Defendants of her whereabouts, and Defendants willfully ignored such "exculpatory information." *P. Res. Motion*, 15.

Again, the Plaintiff confuses the legal test for probable cause. The test for probable cause, as detailed above, is an objective one. The presence of probable cause under this objective standard means that the arrest could legitimately have been brought *even if* some persons acted with malice. *See Wilson*, 212 F.3d at 783; *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 642-43 (D.N.J. 2011). The Supreme Court provided additional clarity in *Davenpeck v. Alford*. There, the Court said, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Davenpeck v. Alford*, 543 U.S. 146, 153 (2004). Thus, even if Defendants Fisher, Knapp, and Massi willfully failed to investigate potentially relevant facts, a judge could still consider the totality of the circumstances and make a reasonable and proper determination that probable cause existed. *Brunson v. Affinity Fed. Credit*

*Union*, 199 N.J. 381, 398, 972 A.2d 1112, 1122 (2009); *Camiolo v. State Farm Fire and Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003).

Not only does Plaintiff fail to overcome the presumption of probable cause consistent with the warrant and grand jury indictment, but she cites facts that contradict her core alibi argument. For example, in her response brief, Plaintiff says the Winslow PD dropped her at home at approximately 12:30pm, and then returned to investigate the assault at 2:08pm. *Pl. Opp'n Brief*, 5–6. This admission contradicts Langford's argument that she remained "in custody" and reveals a window of time that is consistent with Lewis's 1:30pm assault report. Defendants highlight Langford's inconsistencies and provide additional evidence to show the proximity between her home and victim Lewis's. *Def. Reply Brief*, 3. According to Google Maps, a mere 4.1-mile distance or eight minutes driving separated the two. While the Court need not consider whether the assault occurred as claimed by Lewis, Plaintiff's inconsistent factual assertions coupled with Defendants' evidence satisfy the summary judgment standard and show no genuine dispute as to whether Plaintiff was "in custody."

The Court is satisfied that, as with the false arrest claim, if viewing all Plaintiff's allegations in a light most favorable, probable cause existed for her arrest barring her claim of malicious prosecution.


C. Selective Enforcement (Counts V and VI)

    1. *Gloucester Township and Gloucester PD*

To the extent Plaintiff seeks to bring a selective enforcement claim against Gloucester Township and the Gloucester PD, she can only do so under a *Monell* theory. As such, the Court will analyze this claim under the subsequent section on *Monell*.

2. *Knapp, Massi, and Fisher*

Plaintiff claims Defendants singled her out because of a racial animus and disregarded her constitutional protections under the Fourteenth Amendment. *FAC* ¶¶ 84–6; 93.

To state a claim for relief under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States. *West*, 487 U.S. at 48. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. This is not a command that all persons be treated alike, but rather a direction that all persons similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976), or any other suspect classification. To make an equal protection claim, a plaintiff must prove that a defendant's actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

In order to establish a genuine issue of material fact regarding selective enforcement, the non-moving party "must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an "unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (internal quotation marks and citations omitted). A plaintiff therefore needs to "provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect." *Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012). For example, a plaintiff must show that the "decisionmaker . . . selected or reaffirmed a particular course of

action at least in part 'because of,' not merely 'in spite of,' its adverse effects." *Wayte v. United States*, 470 U.S. 598, 610 (1985).

Defendants motion for summary judgment rightly points to the lack of evidence supporting Plaintiff's selective enforcement claim. In her response to these arguments, Plaintiff provides no plausible evidence. For example, Plaintiff has not shown that any of the Defendants disproportionately arrested minorities. *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police*, No. 02-5470, 2009 WL 900854, at *7 (D.N.J. Mar. 31, 2009). Nor has Plaintiff adduced facts to support that any of the Defendants were part of a conspiracy to mistreat or malign people based on her race. *Id.* at *8. Instead, Plaintiff's response merely restates the allegations in the complaint and thus fails to raise any dispute of material fact regarding selective enforcement.

The Court therefore grants Defendants' motion for summary judgment on this claim.


D.  Qualified Immunity

Defendants assert that even if, *arguendo*, a constitutional violation occurred, Defendant Officers should be afforded qualified immunity. Since Plaintiff has not adduced evidence of a constitutional violation, the Court will briefly consider arguments regarding qualified immunity.

The Court notes that, on summary judgment, qualified immunity is a question of law, but disputed issues of material fact will preclude finding qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 327 (3d Cir. 2009) (reversing the district court for finding qualified immunity in an excessive force case where "such a legal conclusion . . . rests on a factual presumption that is inappropriate on summary judgment."); *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("a

decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Put another way, immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S.Ct. 548, 551, 196 L.Ed. 2d 463 (2017) (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)).

This Circuit considers two factors to determine whether a government official is entitled to qualified immunity. *Pollock v. The City of Phila.*, 403 F.App'x 664, 669 (3d Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The first factor requires a court to "decide whether the facts . . . make out a violation of a constitutional right." *Id.* (quoting *Pearson*, 555 U.S. at 232). The second factor requires a court to "decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.*[3] A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, Plaintiff does not dispute that there was a warrant for her arrest. Instead, she takes issue that the evidence offered to support the warrant was incomplete. Again, the Court points to the breadth of facts and information gleaned by the Defendants and cited in the arrest warrant.

---

[3] The Court may consider the factors of the two-prong test in any order. *See Giles*, 571 F.3d at 325 (citing *Pearson*, 555 U.S. at 232).

Officer Fisher, Detective Massi, and Sgt. Knapp each faced specific facts and evidence that provided a reasonable basis to conclude Plaintiff Langford engaged in the crimes at issue. More germane to the issue of qualified immunity, Defendants relied on Assistant Prosecutor Bill Stass at the Camden County Prosecutor's Office who reviewed the facts and information to determine what, if any, charges should be brought against Plaintiff. Again, Plaintiff has not provided plausible evidence to show that Defendants obtained the warrant by perjury, fraud, or other corrupt means. Plaintiff therefore has not shown that "a reasonable officer would not have relied on the prosecutor's advice." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 256 (3d Cir. 2010). As such, the Court defers to the long-held presumption that "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law" is entitled to qualified immunity claims "premised on a lack of probable cause." *Id.* at 255–56. The Defendant officers here, even if the Court assumes *arguendo* that a constitutional violation did occur, are entitled to qualified immunity.

E. *Monell* Claim (Count VII)[4]

In the last count of the amended complaint, Plaintiff claims Gloucester Township and the Gloucester PD violated her rights pursuant to Section 1983. Specifically, Plaintiff says "Defendants instituted policies and procedures within the police department, with indifference to the constitutional rights of the Citizens of Gloucester Township and Winslow Township, including, but not limited to Plaintiff." *FAC* ¶ 99. Plaintiff describes a policy of relying on uncorroborated statements and failing to cooperate with other police departments. *Id.* ¶ 100.

---

[4] Plaintiff's Amended Complaint lists this section as mistakenly as Count VI.

This policy, Plaintiff argues, permitted Defendants to willfully disregard Plaintiff's constitutional rights. *Id.*

As explained, local government units are not liable under Section 1983 solely on a theory of *respondeat superior. See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell*, 436 U.S. at 694 (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). To establish municipal liability under Section 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A plaintiff must show through the municipality's deliberate conduct, it was the *moving force* behind the plaintiff's injury. *Monell*, 436 U.S. at 694 (emphasis added). This Circuit explained in *Natale*,

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the

subsequent act complained of is simply an implementation of that policy." The second

occurs where "no rule has been announced as policy but federal law has been violated by

an act of the policymaker itself." Finally, a policy or custom may also exist where "the

policymaker has failed to act affirmatively at all, [though] the need to take some action to

control the agents of the government 'is so obvious, and the inadequacy of existing

practice so likely to result in the violation of constitutional rights, that the policymaker

can reasonably be said to have been deliberately indifferent to the need.'"

*Natale*, 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff fails to provide any evidence of an underlying constitutional violation

committed by the individual Defendants. For example, Plaintiff fails to provide any official

statements, ordinances, or regulations that amount to a policy. *See Monell*, 436 U.S. at 690.

Plaintiff similarly provides no evidence showing that the government failed to respond to related

complaints. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 976 (3d Cir. 1996) (citing a failure of

Defendant to sustain excessive force complaints as creating a custom that tolerated the use of

excessive force). Instead, Plaintiff Langford repeats previous allegations that, even when

construed most favorably, amount to little more than mere negligence on the part of Defendant

officers. As this Circuit explained in *Williams v. Borough of West Chester*, "'if a person has

suffered no constitutional injury at the hands of [any] individual police officer, the fact that the

departmental regulations might have authorized [unconstitutional action] is quite beside the

point.'" 891 F.2d 458, 467 (3d Cir. 1989) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796,

799 (1986)). For these reasons, the Court finds no genuine dispute of material fact to support

Plaintiff's municipal liability claim, and Defendants' motion for summary judgment is granted

on this claim.

F.  Punitive Damages

Defendants argue that they are entitled to summary judgment on Plaintiff's claim for punitive damages because Plaintiff cannot establish that their conduct was motivated by evil motive or intent.  Since there is no finding of a constitutional violation, the Court only briefly addresses the issue of punitive damages.

 A plaintiff may recover punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) ("[F]or a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.").

As explained, even when viewing Plaintiff's version of events and allegations most favorably, no reasonable juror could conclude that the Defendants acted with reckless indifference to Plaintiff's federally protected rights by lawfully arresting him and prosecuting him with probable cause.  Punitive damages are therefore inappropriate in this matter.


IV.    CONCLUSION

Based on the reasoning above, Defendants' motion for summary judgment is

**GRANTED**.

Dated:   9/21/2018                                           s/ Robert B. Kugler

ROBERT B. KUGLER

United States District Judge